# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **Justin Castine and Rayan Black,** | § | |
| **on behalf of themselves and** | § | |
| **similarly situated others,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CASE NO. 1:18-CV-00496-RP** |
| | § | |
| **Accelore Group, L.L.C. d/b/a** | § | |
| **Accelore Solutions and DHL** | § | |
| **Express (USA), Inc. d/b/a DHL** | § | |
| **Express,** | § | |
| | § | |
| **Defendants.** | § | |

## MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND CONDITIONAL FLSA CERTIFICATION AND SUPPORTING BRIEF

Plaintiffs Justin Castine and Rayan Black, on behalf of themselves and similarly situated others, file this Motion for Notice to Potential Plaintiffs and Conditional FLSA Certification and would respectfully show:

## 1.     Introduction

Plaintiffs filed this action to recover unpaid compensation and other damages for all current and former employees of Defendants who are or were delivery drivers or couriers that reported to, worked at, or obtained freight or packages from the Austin DHL location on Cargo Avenue, Austin, Texas 78719 ("**DHL location**"), during the Class Period (Class Period is defined in Section 3.3). Through this motion, Plaintiffs seek to take the first step in protecting the rights of their fellow delivery drivers or couriers by sending them Court approved notice of this action and letting the workers decide whether to seek unpaid wages under the Fair Labor Standards Act ("FLSA"). As set forth herein,

Plaintiffs readily meet the lenient burden applicable at this stage, making conditional certification and notice appropriate.[1]  Through the allegations in the Complaint and Plaintiffs' attached declarations and pay stubs, Plaintiffs have demonstrated that Defendants violated the FLSA with respect to themselves and other similarly situated delivery drivers or couriers.

Accordingly, Plaintiffs ask that the Court conditionally certify this case as a collective action under the FLSA.  Because each day that passes without notice is another day of pay that the delivery drivers or couriers will lose forever, Plaintiffs also respectfully request an expedited determination on this Motion.

## 2.    Defendants' Uniform Compensation Policies and Practices Violate the FLSA.

Plaintiffs worked for Defendants as delivery drivers or couriers.  Plaintiff Castine's employment was from about January 26, 2017, until his unlawful termination about May 17, 2018.[2]  Plaintiff Black is currently employed by Defendants and his employment began around August 2017.[3]  During calendar year 2017, Plaintiff Castine's paychecks reflected that he received a "salary" of $800/week and contained no reference to the number of regular or overtime hours he actually worked.[4]  Similarly, during 2017, Plaintiff Black received a "salary" and his paychecks contained no reference to the number of regular or overtime hours he actually worked.[5]  While receiving this salary of $800/week and no overtime pay, Plaintiff Castine worked approximately 60 hours/workweek during peak periods, and substantial overtime hours during non-peak periods.[6]  Plaintiff Black worked

---

[1] *See e.g., Rousseau v. Frederick's Bistro, Ltd.*, 2010 WL 1425599, at *3 (W.D. Tex. Apr. 7, 2010).
[2] Exhibit 1, Castine Declaration at ¶ 3.
[3] Exhibit 2, Black Declaration at ¶ 3.
[4] Exhibit 1, Castine Declaration at ¶ 13; *see also* attachment to Exhibit 1, 2017 pay stub.
[5] Exhibt 2, Black Declaration at ¶ 13.
[6] Exhibit 1, Castine Declaration at ¶ 15.

a similar number of overtime hours and had the same general pattern of hours worked over peak and non-peak periods.[7]

Beginning sometime in January 2018, Defendants converted Plaintiffs to hourly employees (yet continued to pay Plaintiffs for fewer hours than Plaintiffs actually worked in an effort to unlawfully reduce Plaintiffs' overtime compensation).[8]   Plaintiffs understand that other similarly-situated delivery drivers were also paid a weekly base rate (and no overtime) before January 2018, and that they, too, were converted to hourly workers sometime in January 2018.[9]   In January 2018, Defendants started using time clocks.[10]   The flat rate salary with no overtime being paid was a consistent pay practice before 2018 for delivery drivers or couriers at the DHL location.[11]

Separately, during Plaintiffs' employment, Defendants' unlawfully reduced the number of hours actually worked by Plaintiffs, shorting their overtime pay, and Plaintiffs understand Defendants engaged in similar conduct towards their coworkers at the DHL location.[12]   On many occasions, Plaintiffs worked through their meal breaks, delivering packages and doing pick-ups for the Defendants.[13]   Indeed, on days when the DHL delivery plane was late, Plaintiffs would not even take lunches (or would spend less than twenty uninterrupted minutes ordering and consuming food from a fast service restaurant).[14] Regardless of whether Plaintiffs worked through lunch, Defendants regularly docked Plaintiffs' pay for an hour-long meal period.[15]

---

[7] Exhibit 2, Black Declaration at ¶ 15.
[8] Exhibit 1, Castine Declaration at ¶¶ 16, 18; Exhibit 2, Black Declaration at ¶¶ 16, 18.
[9] Exhibit 1, Castine Declaration at ¶ 17; Exhibit 2, Black Declaration at ¶ 17.
[10] Exhibit 1, Castine Declaration at ¶ 12; Exhibit 2, Black Declaration at ¶ 12.
[11] Exhibit 1, Castine Declaration at ¶¶ 14, 17; Exhibit 2, Black Declaration at ¶¶ 14, 17.
[12] Exhibit 1, Castine Declaration at ¶¶ 19-20; Exhibit 2, Black Declaration at ¶¶ 19-20.
[13] Exhibit 1, Castine Declaration at ¶ 19; Exhibit 2, Black Declaration at ¶ 19.
[14] *Id.*
[15] *Id.*

Defendants apply these same pay policies, practices, and procedures to all of their delivery drivers or couriers at the DHL location.[16]  Plaintiffs and similarly situated others either did not take lunch or were not completely relieved of their duties during such periods.[17]  Breaks of 30 minutes or longer are compensable unless the employee is "completely relieved from duty for the duration of the break."[18]  Similarly situated delivery drivers or couriers were required to, and did, make deliveries during the alleged meal breaks, yet, like Plaintiffs, they were not paid for such work; instead, Defendants automatically deducted one-hour lunch periods from their hours worked.[19]  These improper deductions directly benefitted Defendants.

Additionally, Plaintiffs and similarly situated others were told by Defendants when to arrive each day at DHL's facility, and thus engaged by Defendants to wait for DHL freight airplanes to arrive for unloading.[20]  But, despite the drivers' compliance with their arrival instructions, Accelore and DHL postponed the clock-in times of Plaintiffs and other delivery drivers and couriers from the actual work start times to the arrival times of the DHL planes, to avoid paying them.[21]

Management knew that these improper lunch deductions were occurring and that the clock-in times of Plaintiffs and similarly situated others were being adjusted to match the arrival of DHL planes, regardless of the fact that drivers were on-site and waiting to load packages as instructed, and thus, should have been compensated for such waiting and working time.[22]  Indeed, the owner of Accelore had a brother who worked at the

---

[16] Exhibit 1, Castine Declaration at ¶ 20; Exhibit 2, Black Declaration at ¶ 20.
[17] *Id.*
[18] 29 C.F.R. § 785.19(a).
[19] Exhibit 1, Castine Declaration at ¶ 20; Exhibit 2, Black Declaration at ¶ 20.
[20] Exhibit 1, Castine Declaration at ¶ 22; Exhibit 2, Black Declaration at ¶ 22.
[21] *Id.*
[22] Exhibit 1, Castine Declaration at ¶ 24; Exhibit 2, Black Declaration at ¶ 24.

company and oversaw some of the improper deductions.[23]  If any supervisor knows about the work being performed, that knowledge may be imputed to the employer.[24]  Moreover, it is clear that management has an affirmative obligation to exercise control over the work performed (or prohibit work it does not want performed).[25]  Management cannot accept the benefit of the work without properly compensating the employees who performed the work.[26]  Thus, the Plaintiffs in this case are entitled to be compensated for this work.

In short, pursuant to a routine policy or practice of Defendants that applied to all delivery drivers, the Plaintiffs, and others similarly situated, worked overtime, had improper deductions, and worked "off the clock" on a regular basis, which was for the benefit of Defendants, and they have not been paid for such time in accordance with the FLSA.

## 3.    Law and Argument

### 3.1    Legal Standard for Conditional Collective Action Certification.

The FLSA empowers Plaintiffs to maintain an action for unpaid wages on behalf of themselves and "similarly situated employees."[27]  Before a similarly situated employee may become a party Plaintiff to this lawsuit for purposes of his or her FLSA claims, he or she must file a written consent with the Court.[28]  This distinct "opt-in" structure heightens the need for employees to receive "accurate and timely notice concerning the pendency of

---

[23] Exhibit 1, Castine Declaration at ¶ 24.
[24] *See Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 827-29 (5th Cir. 1973) (applying a broad standard to the employer's knowledge).
[25] 29 C.F.R. § 785.13.
[26] *Id.*
[27] 29 U.S.C. § 216(b).
[28] *Id.*

the collective action . . . ."[29]  The statute therefore vests district courts with "discretion . . . to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."[30]

The majority of district courts in this Circuit and within this District use a two-stage approach to the certification issue.[31]  Under the two-stage approach, once the Court makes the preliminary determination that potential Plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery.[32]  After conditional certification, discovery becomes relevant regarding the merits of a case and the second step in the collective action procedure.[33]  During this second stage, the Court evaluates discovery-developed evidence to test the validity of the decision made at the notice stage.[34]  Early notice will help this Court manage the case by enabling it to "ascertain the contours of the action at the outset."[35]

### A.    The Standard for Notice is a "Lenient" One.

Because the first step takes place prior to the completion of discovery, the standard for notice "is a lenient one."[36]  Only at the second stage—occurring at the close of discovery—does the Court make a "factual determination" as to whether the class members are similarly situated.[37]  The first stage's lenient standard "typically results in 'conditional certification' of a representative class[,]" to which notice is sent.[38]

---

[29] *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).
[30] *Id.* at 169.
[31] *See Roussell v. Brinker Intern., Inc.,* 441 Fed. Appx. 222, 226 (5th Cir. 2011) (courts are using the similarly situated standard); *Burns v. Chesapeake Energy, Inc.,* 2017 WL 1842937, at *3 (W.D. Tex. 2017) (most courts in the Circuit apply the two step conditional certification approach and this Court will do so here); *Page v. Crescent Directional Drilling, L.P.*, 2015 WL 12660425, at *1 (W.D. Tex. 2015) (the majority of the courts in the Circuit use the two step approach).
[32] Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 (5th Cir. 1995).
[33] *Id.*
[34] *Id.*
[35] *Hoffman-La Roche*, 493 U.S. at 172.
[36] *Mooney*, 54 F.3d at 1214.
[37] *Id.* at 1214.
[38] *Id.*

## B.   Plaintiffs Need Only Make Substantial Allegations Supported by Sworn Statements at the Notice Stage.

At the first stage of the two-stage approach, the Court determines whether named Plaintiffs and potential opt-ins are "similarly situated" based on allegations in the complaint supported by sworn statements.[39]

### 3.2   Plaintiffs are Similarly Situated to the Putative Class.

Plaintiffs are similarly situated to the other delivery drivers or couriers, each of whom would report to, work at, or obtain freight or packages from the Austin DHL location.  "To establish that employees are similarly situated, a plaintiff must show that they are 'similarly situated' with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar."[40]  While evidence of a single decision, policy or plan will meet the similarly situated standard, a unified policy, plan, or scheme is not required to satisfy the more liberal "similarly situated" requirement of the FLSA.[41]  Accordingly, "[a] court may deny a Plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the Plaintiff, and not from any generally applicable rule, policy, or practice."[42]  Courts consider across-the-board decisions to treat a discrete category of employees as not eligible for overtime as sufficient to warrant conditional certification and notice to all those performing the same or similar work.[43]

---

[39] *See, e.g., Bernal Vankar Enterps., Inc.*, 2008 WL 791963, at *4 (W.D. Tex. 2008) (noting that "at least one" of the opt-in Plaintiffs submitted an affidavit supporting the allegations and that was sufficient).

[40] *Barnett v. Countrywide Credit Indus., Inc.*, 2002 WL 1023161, at *1 (internal quotation marks and brackets omitted) (quoting *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla.1994)).

[41] *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095-96 (11th Cir. 1996).

[42] *Donohue v. Francis Sevrs., Inc.*, No. 04-170, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004) (citations omitted).

[43] *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) ("There is nothing unfair about litigating a single corporate decision" in a single collective action...").

In the present case, Plaintiffs' live Complaint as well their Declarations establish they had the primary duties of loading and unloading freight or other packages and delivering them from a DHL location to customers.[44]  The potential Plaintiffs performed similar work duties.[45]  Plaintiffs, along with similarly situated others, were paid a flat "salary" in 2017 that did not account for all hours worked including, but not limited to, overtime hours.[46]  Plaintiffs have established that other delivery drivers or couriers were also paid similarly.[47]  Finally, Plaintiffs have established that improper deductions were taken and that they were not compensated properly for meal periods, waiting time, and other hours worked.[48] Others at the DHL location experienced the same issues.[49]

Thus, Plaintiffs have demonstrated that they were, along with other delivery drivers or couriers, injured by a common policy or plan that violated the FLSA through firsthand experiences, conversations with co-workers and management, and their attached paystubs.  Consequently, the Court should conditionally certify this case as an FLSA collective action.

### 3.3    The Potential Class Requested.

Plaintiffs seek to represent the following FLSA collective action class, the members of which have been harmed by Defendants' unlawful pay practices:

> All current and former employees of Defendants who are or were delivery drivers or couriers that reported to, worked at, or obtained freight or packages from the Austin DHL location on Cargo Avenue, Austin, Texas 78719, during the Class Period.

---

[44] Exhibit 1, Castine Declaration at ¶ 6; Exhibit 2, Black Declaration at ¶ 6.
[45] *Id.*
[46] Exhibit 1, Castine Declaration at ¶¶ 13-14; Exhibit 2, Black Declaration at ¶¶ 13-14.
[47] Exhibit 1, Castine Declaration at ¶¶ 14, 17, 20, 22, and 27; Exhibit 2, Black Declaration at ¶¶ 14, 17, 20, 22, and 27.
[48] Exhibit 1, Castine Declaration at ¶¶ 18-20; Exhibit 2, Black Declaration at ¶¶ 18-20.
[49] *Id.*

The Class Period is three years prior to the Court's order granting conditional certification.

**4.      Court-Authorized Notice is Appropriate Here.**

In combination with an order conditionally certifying this collective action, Plaintiffs also request that the Court authorize that notices be disseminated to all individuals who worked at the DHL location as delivery drivers or couriers at any time during the three years prior to the Court's order granting conditional certification. Plaintiffs seek permission to send the notices through email and text message in addition to regular mail.  Plaintiffs' proposed notices and opt-in methods are in line with the FLSA's remedial purpose.

**4.1.    Plaintiffs' Proposed Notices.**

Attached as Exhibits 3 and 4 are Plaintiffs' proposed Judicial Notices. Plaintiffs' proposed notices have been carefully drafted to achieve "the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants."[50]

**4.2.    Email and Text Message Notice are Appropriate.**

The Supreme Court has held that "District Courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."[51] In an effort to avoid a "multiplicity of suits," district courts are empowered to oversee notice that is "timely, accurate, and informative."[52]   District courts are instructed to authorize notice that is "orderly, sensible, and not otherwise contrary to statutory

---

[50] *Elmajdoub v. MDO Dev. Corp.*, No. 12-cv-5239, 2013 WL 6620685, at *4 (S.D.N.Y. Dec. 11, 2013).
[51] *Hoffman-LaRoche*, 493 U.S. at 169.
[52] *Id.* at 172.

commands."[53]  In 1989, when the Supreme Court made this decision, there is little doubt that notice via first class mail was the best way to provide notice in "an efficient and proper way."[54]  But the Supreme Court was intentionally vague in defining the manner and form of the notice to be sent. "We confirm the existence of the trial court's discretion, *not the details of its exercise.*"[55]

This Court should exercise that discretion to approve notice via email and text message.  Allowing such notice will facilitate and not complicate the notice process.[56]  Plaintiffs' proposed email is attached as Exhibit 3.  Text message notice is also "eminently reasonable," because "[t]his has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication."[57]

Text message notice is particularly appropriate here, because Plaintiffs and the putative class members were regularly dispatched away from the DHL location during work, and therefore had occasion to use their cell phones to communicate with both customers and Defendants.  Indeed, Defendants' main method of communication with Plaintiffs and other delivery drivers or couriers on when to arrive for work were group text messages.[58]  As Plaintiffs have confirmed, texts are usually the best way to reach the

---

[53] *Id.* at 170.

[54] *Id.* at 171.

[55] *Id.* at 170 (emphasis added).

[56] *Beall v. Tyler Techs., Inc.*, 2009 WL 3064689, at *4 (E.D. Tex. 2009) (Ward, J.) (court granted class notice via email and later compelled the employer to produce all email addresses); *Burns*, 2017 WL 1842937, at *9 ("Nor is there a valid reason why the parties should not agree to e-mail notice in the year 2017.); *Page,* 2015 WL 12660425 at *3 ("[e]mail is not the wave of the future; [it] is the wave of the last decade and a half," and it is particularly important here) (quoting *Rodriguez v. Stage 3 Separation, LLC*, 5:14-CV-603-RP, at 2 n.1 (W.D. Tex. Mar. 16, 2015)).

[57] *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. Sept. 14, 2015); *see also Dempsey v. Jason's Premier Pump Servs., LLC*, No. 1:15-cv-703, 2015 WL 13121134, at *2 (D. Colo. Nov. 11, 2015) (granting notice via text message).

[58] Exhibit 1, Castine Declaration at ¶ 26, Exhibit 2, Black Declaration at ¶ 26.

delivery drivers or couriers given they travel frequently for work.[59]  Plaintiffs request that the following text message notices be approved:

> NOTICE AUTHORIZED BY THE UNITED STATES DISTRICT COURT: You are receiving this notice because company records show that you reported to, worked at, or obtained freight or packages from the Austin DHL location on Cargo Avenue, Austin, Texas, and may have the opportunity to join a lawsuit for unpaid wages. Please contact the Mullen Firm at 512-537-7959 or the Hansum Law Firm at 512-481-9292 for more information.

### 4.3.  Permitting Three Forms of Notice Achieves the Purposes of *Hoffman-LaRoche*.

Allowing notice via all three proposed methods of notice—regular mail, email, and text message—keeps pace with the ways in which our manner and modes of communication have changed since *Hoffman-LaRoche* was decided in 1989. As one example, when this Court issues an Order on the present motion, counsel for the parties will be notified about it via email, not regular mail. Regular mail may not arrive at its destination because it may be misdelivered, misplaced, taken from shared mailboxes, left unopened, and/or sent to an inaccurate mailing address. Even if the notice does reach its destination, there is no guarantee that it will be reviewed, *i.e.*, that the putative class member will receive notice of the lawsuit. Information is coming at individuals from all angles at all times, and there is simply no way to digest it all. A notice that actually arrives in a putative class member's mailbox—intermixed with dozens of solicitations for credit cards, cable companies, and insurance rates, to name a few—will *still* very possibly be left unopened.

In fact, many conniving solicitors now intentionally make their letters look like legitimate legal notices to trick recipients into taking action in response. The realities of

---

[59] *Id.*

modern society make it less likely that putative class members will actually review notices that arrive in their mailbox.  These solicitations have unfortunately infiltrated email inboxes, making text message notice also appropriate.  Putative class members are far less likely to receive this level of solicitation from unfamiliar sources in their text message inbox, in part because of the Telephone Consumer Sales Protection Act, 47 U.S.C. § 227, *et seq.* (prohibiting certain solicitations via text message, auto-dial phone calls, and faxes).

Class members are often concerned that a lawsuit notice is a "scam" or otherwise not legitimate. The *combination* of notices helps alleviate this concern and ensure that class members afford the notice the attention it deserves.  Providing these three forms of direct notice is necessary to achieve the purposes of *Hoffman-LaRoche*. Email and text message notice carry little cost, and provide for a greater chance that each putative class member is actually notified of the action, which is the goal at this stage of the proceeding. As a result, the Court should allow notice to be sent via mail, email, and text message to putative class members.

### 4.4.   A 90-day Opt-in Period is Appropriate.

Once notice is sent, Plaintiffs request that potential members of the collective action be granted 90 days in which to return an opt-in form.[60]

### 4.5.   Expedited Disclosure of Names and Contact Information is Appropriate.

Plaintiffs request that the Court direct Defendants to produce with seven (7) days an electronic list of the names, last known addresses, telephone numbers, e-mail

---

[60] *See Gandhi v. Dell, Inc. & Dell Mktg. USA, L.P.*, 2009 WL 3427218, at *2 (W.D. Tex. Oct. 20, 2009) (approving 90 day opt-in period).

addresses, dates of employment, and job titles for all current of former delivery drivers or couriers who reported to, worked at, or obtained freight or packages from the Austin DHL location on Cargo Avenue, Austin, Texas 78719, during the three years prior to the Court's Order granting conditional certification.[61]

Plaintiffs should also be permitted to take reasonable steps to ensure the class members receive the notice.  Those steps can include updating addresses and calling class members to request updated addresses if a message or mail is returned undeliverable.

## 5.    Conclusion

For the foregoing reasons, Plaintiffs requests the Court (1) conditionally certify this lawsuit as an FLSA collective action as previously defined; (2) approve the Plaintiffs' proposed notices of the action; (3) order Defendants to provide name, contact information, dates of employment, and job titles for all potential class members; (4) authorize Plaintiffs to send the notices via first class mail, email, and text message; and (5) allow putative class members 90 days to opt-in to the action.  A proposed order is attached as Exhibit 5.

---

[61] *Rousseau,* 2010 WL 1425599, at *3 (ordering the production of names and addresses of former employees); *Beall,* 2009 WL 1766141, at *4 ("The Court also orders defendants to provide the plaintiffs' counsel with the names, job titles, addresses, telephone numbers, Social Security numbers, and email addresses, where available, of the potential class members.").

Respectfully submitted,


*/s/ Kevin S. Mullen*
Kevin S. Mullen
Texas Bar No. 24032892

**THE MULLEN FIRM PLLC**
3801 N. Capital of Texas Hwy.
Suite E-240/604
Austin, TX 78746
512.537.7959 (Telephone)
kevin@themullenfirm.com

    and

*/s/ Eric J. Hansum*
Eric J. Hansum
Texas Bar No. 24027225

**HANSUM LAW FIRM, PLLC**
609 West 9th Street
Austin, Texas 78701
512-481-9292 (phone)
512-287-4239 (fax)
ehansum@hansumlaw.com

**ATTORNEY FOR PLAINTIFFS**



**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Motion will be served upon Defendants at the same time as the service of summons and the Original Complaint.


*/s/ Kevin S. Mullen*
Kevin S. Mullen