## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| Justin Castine, Rayan Black, | § | |
| and Marta-Maria Tablas-Tozo, | § | |
| on behalf of themselves and | § | |
| similarly situated others, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | CASE NO. 1:18-CV-00496-RP |
| | § | |
| Accelore Group, L.L.C. d/b/a | § | |
| Accelore Solutions, and DHL | § | |
| Express (USA), Inc. d/b/a | § | |
| DHL Express, | § | |
| | § | |
| **Defendants.** | § | |

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT UNDER THE FLSA

Justin Castine, Rayan Black, and Marta-Maria Tablas-Tozo ("**Plaintiffs**"), on behalf of themselves and similarly situated others, by and through their attorneys, The Mullen Firm PLLC and the Hansum Law Firm, PLLC, make the following Complaint against Defendants (all the parties sued in this lawsuit are individually and/or collectively referred to as the "**Defendants**"):

### I.     INTRODUCTION

1.     Plaintiffs, on behalf of themselves and similarly situated others, bring this action to recover unpaid overtime and other compensation from Defendants under the Fair Labor Standards Act ("**FLSA**"). Plaintiffs and similarly situated others work or worked for Defendants as delivery drivers or couriers. During certain time periods, Defendants failed to pay Plaintiffs and similarly situated others any overtime pay for hours worked in excess of 40 in any given workweek. Separately, Plaintiffs and similarly

situated others were not paid for off the clock work in violation of the FLSA, and/or Defendants purposefully adjusted downward the working time reported by Plaintiffs and similarly situated others by deducting time for untaken lunches and adjusting arrival times to exclude pre-shift work and compensable waiting time.  Defendants' actions were willful.

## II.    PARTIES

2.    At all relevant times, Plaintiffs, and similarly situated others, are current or former employees of Defendants and are/were employees as defined in 29 U.S.C. § 203(e).

3.    Plaintiff Justin Castine ("**Plaintiff Castine**") is a citizen of Texas and a resident of this District, who resides in Hays County, Texas.  He has consented to the filing of this action, as indicated by his written consent attached and incorporated by reference as Exhibit A.  At no time during his employment did he qualify as exempt under the FLSA.

4.    Plaintiff Rayan Black ("**Plaintiff Black**") is a citizen of Texas and a resident of this District, who resides in Williamson County, Texas.  He has consented to the filing of this action, as indicated by his written consent attached and incorporated by reference as Exhibit A.  At no time during his employment did he qualify as exempt under the FLSA.

5.    Plaintiff Marta-Maria Tablas-Tozo ("**Plaintiff Tablas**") is a citizen of Texas and a resident of this District, who resides in Travis County, Texas.  She has consented to the filing of this action, as indicated by her written consent attached and incorporated by reference as Exhibit A.  At no time during her employment did she qualify as exempt under the FLSA.

6.    Plaintiffs bring claims on behalf of themselves and as part of a collective action under 29 U.S.C. § 216(b) on behalf of similarly situated employees currently or

formerly employed by Defendants. The collective action claims are for overtime compensation, wage compensation (off the clock work), liquidated damages (or alternatively, interest), and attorney fees and costs under 29 U.S.C. §§ 207 and 216(b).

7.      Defendant Accelore Group, L.L.C. d/b/a Accelore Solutions ("**Accelore**") is a domestic corporation and may be served with summons by serving its Registered Agent at 4612 Old Pond Dr., Plano, Texas 75024 or at any location where it may be found including its business address at 17774 Preston Rd., Suite 2B, Dallas, Texas 75252.

8.      Defendant DHL Express (USA), Inc. d/b/a DHL Express ("**DHL**") is a foreign corporation and may be served with summons by serving its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201, or at any location where it may be found.

### III.    FLSA COVERAGE

9.      Defendants Accelore and DHL operate as integrated delivery and courier services and they regularly perform work which is closely or intimately related to the functioning of instrumentalities of interstate commerce, consisting of the delivery of freight and parcels that have crossed domestic and international borders, utilizing air transportation and the local, state, and interstate roadway system. Throughout Plaintiffs' employment for Defendants, Plaintiffs were engaged in interstate commerce by unloading freight and parcels originating worldwide from DHL airplanes, sorting, and reloading such items into their assigned DHL- and Accelore-branded delivery vans, and driving over the local, state, and interstate roadway system in their respective vans to deliver such items.

10.     Defendant Accelore is, and at all relevant times, was, an employer and an enterprise engaged in commerce or the production of goods for commerce within the

definitions of 29 U.S.C. §§ 203(d), 203(i), 203 (j), 203(r), and 203(s).  Defendant Accelore is also engaged in interstate commerce.  29 U.S.C. §§ 203(b).

11.     Defendant DHL is, and at all relevant times, was, an employer and an enterprise engaged in commerce or the production of goods for commerce within the definitions of 29 U.S.C. §§ 203(d), 203 (i), 203 (j), 203(r), and 203(s).   Defendant DHL is also engaged in interstate commerce.   29 U.S.C. §§ 203(b).

12.     At all relevant times, Defendants' enterprise had gross sales made or business done in excess of $500,000.00.

13.     Defendants jointly employed Plaintiffs and others similarly situated by employing or acting in the interest of employer towards Plaintiffs and those similarly situated, directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation and by suffering Plaintiffs, and those similarly situated, to work.  The work performed daily by Plaintiffs and others similarly situated was for the benefit for, and in the interest of, both Accelore and DHL.  Plaintiffs' work for Accelore was an integral and indispensable part of the parcel delivery service DHL promised to its customers, and without Plaintiffs and others similarly situated, DHL could not have operated its delivery service.

14.     At all material times, Plaintiffs and others similarly situated were employees who engaged in commerce as required by 29 U.S.C. § 207.

15.     Defendants have been subject to the requirements of the FLSA and are employers covered by the FLSA.

**16.**     Whenever in this Complaint it is alleged that any Defendants committed any act or omission, it is meant that Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission, and at the time it was

committed, it was done in the course and scope of employment of Defendants' officers, directors, vice-principals, agents, servants, or employees.

## IV.    JURISDICTION AND VENUE

17.    This Court has federal question jurisdiction over the claims against Defendants pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

18.    The Court has personal jurisdiction over Defendants because they have done and do business in the State of Texas and within the territorial limits of this District. Defendants have also purposefully availed themselves of the benefits of doing business in Texas and this District.

19.    Venue is proper in this District as a substantial part of the events or omissions giving rise to this claim occurred in this District and Defendants regularly conduct business in this District.  *See* 28 U.S.C. § 1391(b) and (c).

## V. FACTUL BACKGROUND

20.    Plaintiff Castine was first employed as a delivery driver or courier by Defendants on or about January 26, 2017, until his unlawful termination on or around May 17, 2018.  Plaintiff Black is currently employed as a delivery driver or courier by Defendants and his employment began around August 2017.  Plaintiff Tablas is currently employed as a delivery driver or courier by Defendants and her employment began sometime in 2014.

21.    Defendant Accelore is a distribution company that provides, among other things, delivery services for customers.  According to its website, Accelore's "drivers and dispatch staff are trained and experienced to ensure consistent on-time arrivals, proper care of packages, ***and strict adherence to your company's values***" (emphasis

added).[1]  Thus, Accelore promises that its employees will conform to the policies and practices of DHL.

22.     Defendant DHL is a global logistics company with a workforce exceeding 350,000 employees.  According to its website, DHL "transports urgent documents and goods reliably and on time from door-to-door in more than 220 countries and territories, and operates the most comprehensive global express network. With a fleet of more than 250 aircraft, DHL Express is also one of the largest air carriers worldwide."[2]

23.     During all relevant times to this matter, Accelore maintained a service contract with DHL to provide logistics and delivery services for DHL utilizing jointly employed drivers who began and ended each workday at DHL's receiving and sorting facility at Austin-Bergstrom International Airport.   Indeed, DHL owns this building according to property tax records.[3]  During the relevant time period, DHL controlled the quantity of Accelore's work, placed significant demands on Accelore for the quality and delivery of Accelore's services (including the branding of such services as DHL's), and Accelore was economically dependent on DHL to meet its payroll requirements for Plaintiffs and others similarly situated.

24.     Plaintiffs, and others similarly situated, are employed by Defendants as delivery drivers or couriers.   Defendants employed numerous delivery drivers or couriers in the Austin, Texas area during the past several years (and within the statute of limitations).

---

[1] http://accelore.com/logistic/index.html
[2] http://www.dhl.com/en/about_us/company_portrait/our_organization.html
[3] https://www.traviscad.org/property-search/ (and run a search on "Cargo" to see the location owned by DHL).

25.     The primary duties of Plaintiffs and other delivery drivers or couriers employed by Defendants include unloading DHL packages and materials from DHL's freight airplanes, loading DHL packages and materials into DHL- and (in smaller script) Accelore-branded delivery vehicles, and delivering such items to DHL's customers in the surrounding geographic area.

26.     Plaintiffs and their fellow drivers were supervised and controlled by DHL personnel and required to wear DHL-branded shirts bearing, front and back, the distinctive red and yellow DHL logo, and prohibited from wearing non-DHL-approved clothing.   Plaintiffs understood that they could, effectively, be terminated by both Accelore and DHL personnel, who would threaten to take the "badge" of any employee who mishandled a parcel (without a badge, employees could not access the Transportation Security Agency-secured DHL facility where parcels were unloaded from DHL's planes, sorted, and loaded into DHL/Accelore-branded vans for delivery by Plaintiffs and other drivers).   Accelore and DHL administrative personnel to whom Plaintiffs and other drivers reported shared DHL's office space at Austin-Bergstrom.

27.     As delivery drivers or couriers, Plaintiffs, and others similarly situated, were required to perform other, additional non-exempt work under the FLSA, such as cleaning out and unloading the vans and planning and entering routes.

28.     Plaintiffs and their coworkers were required to meet DHL's delivery deadlines, and they were subject to disciplinary action if such deadlines were not met. Plaintiffs and their fellow drivers identified themselves to DHL's customers as DHL drivers.   Both DHL and Accelore directly and indirectly controlled the work schedules and conditions of employment, including start, stop, and break times, of Plaintiffs and others similarly situated.  Accelore and DHL exercised direct and/or indirect control over

Plaintiffs' rate and method of pay, and how and when Plaintiffs and others similarly situated were allowed to clock in and out for work.  Plaintiffs and others similarly situated clocked in and out on a timeclock situated in DHL's facility, and, upon information and belief, DHL had access to and control over the time records and work schedule for the Plaintiffs and similarly situated others.

29.     Plaintiffs and similarly situated individuals did not have primary duties to perform office or non-manual work directly related to the management or general business operations of the Defendants or the Defendants' customers.

30.     Plaintiffs and similarly situated others did not have primary duties of exercising discretion and independent judgment with respect to matters of significance.

31.     Defendants required the Plaintiffs, and others similarly situated, to work in excess of 40 hours per week during many workweeks ("**overtime hours**").

32.     Plaintiffs regularly worked well over 40 hours per workweek.  During peak periods, Plaintiff Castine would work approximately 60 hours per week.  In non-peak periods, he worked approximately 45-50 hours per week.  Plaintiffs Black and Tablas worked similar hours.

33.     Other similarly situated delivery drivers also worked extensive overtime hours.

34.     There was a systematic scheme to deprive the Plaintiffs and similarly situated others of their earned overtime.  At various points in time during the past three years (and possibly continuing beyond the date of this complaint), Defendants paid Plaintiffs and other delivery drivers or couriers a flat weekly rate that did not change based on the hours Plaintiffs worked in a workweek, and Defendants paid no overtime

whatsoever.  This blatantly unlawful pay practice deprived Plaintiffs and other delivery drivers or couriers of the statutorily-mandated overtime premiums they earned.

35.     Indeed, Plaintiff Castine was paid under this illegal pay practice by Defendants from January of 2017 until early 2018.  Before January 2018, Plaintiff Castine's paychecks reflected that he received a "salary" of $800/week and contained no reference to the number of regular or overtime hours he worked. This same "salary" practice occurred for Plaintiff Black except he was paid about $600/week with no reference to the number of regular or overtime hours worked.  Likewise, although she routinely worked overtime, Plaintiff Tablas was paid only a salary of about $750/week and no overtime before January 2018.  Beginning sometime in January 2018, Defendants converted Plaintiffs to hourly employees (yet continued to pay Plaintiffs for fewer hours than Plaintiffs actually worked in an effort to unlawfully limit Plaintiffs' overtime compensation).  Plaintiffs understand that other similarly-situated delivery drivers were also paid a flat weekly rate (and no overtime) before January 2018, and that they, too, were converted to hourly workers sometime in January 2018.

36.     Defendants were aware that they misclassified Plaintiffs and others similarly situated under the FLSA, or, at a minimum, that paying delivery drivers a salary and no overtime compensation exposed Defendants to a significant risk of violating the FLSA.

37.     On information and belief, since converting Plaintiffs to an hourly employee, to avoid playing Plaintiffs and others similarly situated their legally earned overtime pay, Defendants manipulated (and may be continuing to manipulate for current employees), the hours worked by the Plaintiffs, and others similarly situated, to reduce the overtime amounts properly due.  This manipulation occurs by, for example, taking

deductions for lunches where Plaintiffs and other similarly situated others either did not take lunch or were not completely relieved of their duties during such periods. Additionally, Plaintiffs and similarly situated others were told by Defendants when to arrive each day at DHL's facility, and thus engaged by Defendants to wait for DHL freight airplanes to arrive for unloading.  However, Defendants improperly postponed the clock-in times of Plaintiffs and others similarly situated from their actual work start times to the arrival times of the DHL planes, to avoid paying for compensable waiting time and consequential overtime.

38.     On many occasions, Plaintiffs worked through meal breaks, delivering packages and doing pick-ups for the Defendants.  Indeed, on days when the DHL delivery plane was late, Plaintiffs would not even take lunches (or they spent less than twenty uninterrupted minutes ordering and consuming food from a fast service restaurant). Regardless of whether they worked through lunch, Defendants docked Plaintiffs' pay for an hour-long meal period as a matter of course.  Defendants rarely corrected this untaken lunch issue, and when the issue was raised by Plaintiff Castine, as set forth below, Defendants retaliated against him for daring to question the accuracy of his paychecks.

39.     Based upon information and belief, similarly situated delivery drivers were required to, and did, make deliveries during their alleged meal breaks, yet, like Plaintiffs, they were not paid for such work; instead, Defendants automatically deducted one-hour lunch periods from their hours worked.  These improper deductions directly benefitted Defendants.

40.     Defendants unilaterally decided which packages would be delivered and the quantity of packages to be delivered.   Plaintiffs and others similarly situated could not

reject delivery assignments.  Nor could they request that deliveries be restricted to a particular geographic area.

41.     If delivery drivers did not abide by the assignments or routes, they would be subject to discipline, including termination.

42.     Based upon information and belief, all delivery drivers are subject to these policies and practices of Defendants.

43.     Defendants' management had actual and/or constructive knowledge of the salary-based compensation system utilized by Defendants, which provided for no overtime pay despite employees routinely working in excess of forty hours per week, and Defendants' time-shorting and improper lunch deduction practices.  Upon information and belief, Defendants' management, knew of and approved of these unlawful pay practices, and Plaintiffs reserve the right to add such persons as parties to this suit after further discovery.

44.     Defendants direct and control every aspect of the timekeeping and payroll system utilized for the Plaintiffs and others similarly situated.

45.     Defendants are aware of and encourage the overtime hours worked by Plaintiffs and similarly situated individuals.

46.     Plaintiff Castine made multiple complaints to Defendants about the improper pay practices and he was fired in retaliation for making such complaints.   For instance, in the week before his firing, he made complaints about not being paid properly for all hours worked to various members of Defendants' management.

47.     Plaintiff Castine remains currently unemployed, and his lost wages continue to accrue daily.

48.     Because of his termination, Plaintiff Castine has suffered a lack of sleep, stress, and mental anguish, among other things.

49.     Upon information and belief, Defendants' unlawful pay practices, particularly its practices regarding paying salary (and no overtime) to non-exempt workers, and its time-shorting and untaken lunch deduction practice, are consistently applied to Plaintiffs and similarly situated employees.

50.     Before Defendants converted Plaintiffs and similarly situated others to hourly workers sometime in January 2018, although they worked many hours of overtime, Plaintiffs and similarly situated others were not paid overtime for any hours worked in excess of 40 in any given week.  Following the conversion of such workers to hourly employees in January 2018, Defendants paid Plaintiffs and similarly situated others for only some of the overtime actually worked, thus depriving them of FLSA-mandated overtime.

51.     Plaintiffs and similarly situated others do not fall under any of the exemptions from the federal overtime requirements.

52.     Defendants' denial of overtime and other compensation to Plaintiffs and similarly situated others has been willful and deliberate.

53.     Defendants have not made good faith efforts to comply with the FLSA.

### VI.     COLLECTIVE ACTION ALLEGATIONS

54.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime and other compensation, liquidated damages (or, alternatively, interest), and attorney fees under the FLSA.  In addition, numerous current and former employees are similarly situated to Plaintiffs with regard to their wages and claims for unpaid wages and damages, in that they have been denied proper overtime and

other compensation by Defendants in the workweeks falling within the three (3) years preceding the filing of this Complaint (the "**Class Period**").

55.    The proposed class is defined as:

All current and former employees of Defendants during the Class Period who are or were delivery drivers or couriers that reported to, worked at, or obtained freight or packages from the Austin DHL location on Cargo Avenue, Austin, Texas 78719.

Counsel for Plaintiffs seeks to represent only similarly situated others who, after appropriate notice of their ability to opt-in to this action, have provided consent in writing to be represented by counsel for Plaintiffs as required under 29 U.S.C. § 216(b).

56.    Plaintiffs are representatives of those other current and former employees of Defendants and are acting on behalf of their interests, as well as Plaintiffs' own interests, in bringing this action.  These similarly situated employees are known to the Defendants and are readily identifiable and may be located through Defendants' payroll, tax, and other records.  These individuals may be readily notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b) for the purposes of collectively adjudicating their claims for overtime and other compensation, liquidated damages (or, alternatively, interest), and attorney fees under the FLSA.

## VII.    COUNT 1 – INDIVIDUAL AND COLLECTIVE ACTION CLAIMS AGAINST ALL DEFENDANTS: DENIAL OF OVERTIME COMPENSATION

57.    Plaintiffs, and the similarly situated others, re-allege and incorporate by reference all allegations in all preceding paragraphs.

58.    Under the FLSA, 29 U.S.C. § 207, Defendants were and remain obligated to compensate Plaintiffs and similarly situated others for all hours worked in excess of forty

(40) in any given week.  Overtime compensation must be paid at a rate of not less than one and one-half times the regular rate of pay.

59.     During the three years prior to the filing of this Complaint, Plaintiffs and/or similarly situated others were regularly permitted, encouraged, and/or required by Defendants to work in excess of forty (40) hours per week, but Plaintiffs were not paid for all such overtime work.

60.     By failing to pay overtime compensation due to Plaintiffs and similarly situated others, Defendants willfully, knowingly, and/or recklessly violated the FLSA, which requires overtime compensation to be paid to non-exempt employees.

61.      Because of Defendants' policy, pattern, and practice of withholding overtime compensation, Plaintiffs and similarly situated others have been damaged in that they have not received wages due to them under the FLSA.

62.     Defendants have made it difficult to account with precision for the unpaid overtime worked by Plaintiffs and similarly situated others during the liability period because they did not make, keep, and preserve records of all hours worked by such employees as required for nonexempt employees pursuant to 29 U.S.C. § 211(c).

63.     Defendants failed to make good faith efforts to comply with the FLSA and have willfully and deliberately sought to evade the FLSA's requirements.

64.     Because of Defendants' policy, pattern, and practice of withholding the correct compensation, Plaintiffs and similarly situated others have been damaged in that they have not received wages due to them under the FLSA.

### VIII.   COUNT 2- INDIVIDUAL AND COLLECTIVE ACTION CLAIMS: FAILURE TO COMPENSATE FOR WORK PERFORMED AND "OFF THE CLOCK" ALLEGATIONS AGAINST ALL DEFENDANTS

65.      Plaintiffs, and the similarly situated others, re-allege and incorporate by reference all allegations in all preceding paragraphs.

66.      Plaintiffs and similarly situated others are or were non-exempt employees under the FLSA.

67.      Defendants failed to compensate Plaintiffs and similarly situated others for all hours they worked in a workweek.  Specifically, Defendants failed to pay Plaintiffs and similarly situated others for compensable working and waiting time and untaken meal breaks.  In an effort to reduce Defendants' overtime compensation liability, Defendants purposefully and knowingly adjusted Plaintiffs' and similarly situated others' time records to reflect that (a) Plaintiffs and others took meal breaks when, in fact, they did not, and/or (b) Plaintiffs and others clocked in for work later than their actual work start times.

68.      Defendants failed to make good faith efforts to comply with the FLSA and have willfully and deliberately sought to evade the FLSA's requirements.

69.      Defendants have made it difficult to account with precision for the unpaid overtime worked by Plaintiffs and similarly situated employees during the liability period because they did not make, keep, and preserve accurate records of all hours worked by such employees as required for nonexempt employees pursuant to 29 U.S.C. § 211(c).

70.      Because of Defendants' policy, pattern, and practice of withholding the correct compensation, Plaintiffs and similarly situated others have been damaged in that they have not received wages due to them under the FLSA.

## IX.  COUNT 3: PLAINTIFF CASTINE'S INDIVIDUAL RETALIATORY DISCHARGE CLAIM UNDER THE FLSA AGAINST ALL DEFENDANTS

71.    Plaintiff Castine re-alleges and incorporates by reference all allegations in all preceding paragraphs.

72.    Plaintiff Castine engaged in protected activity by complaining to Defendants that their conduct violated the FLSA by failing to compensate delivery drivers for overtime and/or failing to compensate for all time worked.

73.    Plaintiff Castine made his complaints to various members of Defendants' management and/or members of Defendants' management team were aware of his complaints.

74.    As a direct and retaliatory result of Plaintiff Castine's protected activity, Defendants unlawfully terminated him on or around May 17, 2018.

75.     Defendants' termination of Plaintiff Castine's employment was intentional and knowing and in violation of the FLSA.

76.    As a direct, legal and proximate result of Defendants' retaliation, Plaintiff Castine sustained, and will continue to sustain, economic damages to be proven at trial. Plaintiff Castine has also suffered emotional distress, resulting in damages in an amount to be proven at trial.  Plaintiff Castine further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for Defendants' retaliation at trial, including liquidated damages for all willful violations, prejudgment interest, attorney fees and costs, and other compensation pursuant to 29 U.S.C. §216(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of others similarly situated, request the following relief:

a)  Defendants supply the names, addresses, telephone numbers, and social security numbers of each and every employee in the proposed class;

b)  Authorization to issue notice under 29 U.S.C. § 216(b) at the earliest possible time to all current and former similarly situated employees of Defendants during the three (3) years immediately preceding the filing of this action, informing them that this action has been filed, of the nature of the action, and of their right to opt into this lawsuit;

c)  A declaratory judgment that Defendants have violated the overtime provisions of the FLSA, 29 U.S.C. § 207, as to the Plaintiffs and similarly situated persons who opt into this action;

d)  A declaratory judgment that Defendants' violations of the FLSA were willful;

e)  An award to Plaintiffs and other similarly situated persons who opt into this action of damages in the amount of unpaid overtime and other compensation to be proven at trial;

f)  An award to Plaintiffs and other similarly situated persons who opt into this action of liquidated damages in an amount equal to the overtime and other compensation shown to be owed to them pursuant to 29 U.S.C. § 216(b); or, if liquidated damages are not awarded, then in the alternative, prejudgment interest;

g)  An award to Plaintiffs and other similarly situated persons who opt into this action of reasonable attorney fees and costs, pursuant to 29 U.S.C. § 216(b);

h) An award to Plaintiff Castine for damages for unlawful retaliation including without limitation, lost wages, front pay, emotional distress and mental anguish damages;

i) An award of post-judgment interest at the highest lawful rates for all amounts, including attorney fees, awarded against Defendants; and

j) An award of such other and further relief as this Court deems equitable and just.

Respectfully submitted,

/s/ Kevin S. Mullen
Kevin S. Mullen
Texas Bar No. 24032892
**THE MULLEN FIRM PLLC**
3801 N. Capital of Texas Hwy.
Suite E-240/604
Austin, TX 78746
512-537-7959 (phone)
kevin@themullenfirm.com

and

/s/ Eric J. Hansum
Eric J. Hansum
Texas Bar No. 24027225
**HANSUM LAW FIRM, PLLC**
609 West 9th Street
Austin, Texas 78701
512-481-9292 (phone)
512-287-4239 (fax)
ehansum@hansumlaw.com

**ATTORNEY FOR PLAINTIFF(S)**

**CERTIFICATE OF SERVICE**

Defendants have not answered this suit as of the filing of this pleading.  I certify that a true and correct copy of the foregoing document will be served on any counsel for Defendants on the day such counsel makes an appearance in the case.

/s/ Kevin S. Mullen
Kevin S. Mullen

# EXHIBIT A

## FLSA CONSENT TO SUE FORM

I hereby consent to join and authorize this filing of a civil action in the United States District Court against the Defendants in this lawsuit and their related entities and individuals to recover unpaid compensation, additional damages, and costs under the Fair Labor Standards Act, and be represented by the Mullen Law Firm PLLC and the Hansum Law Firm, PLLC (or such other persons or entities as they may designate) for purposes of bringing this action.

If this actions gets conditionally certified and then decertified, I authorize the above counsel to reuse this Consent Form to re-file my claims in a separate or related action against Defendants (or their related entities and individuals).

_____
Signature

6-7-2018
Date

JUSTIN CASTINE
Name (Printed)

## <u>FLSA CONSENT TO SUE FORM</u>

I hereby consent to join and authorize this filing of a civil action in the United States District Court against the Defendants in this lawsuit and their related entities and individuals to recover unpaid compensation, additional damages, and costs under the Fair Labor Standards Act, and be represented by the Mullen Law Firm PLLC and the Hansum Law Firm, PLLC (or such other persons or entities as they may designate) for purposes of bringing this action.

If this actions gets conditionally certified and then decertified, I authorize the above counsel to reuse this Consent Form to re-file my claims in a separate or related action against Defendants (or their related entities and individuals).


*Rayan Black*
_____
Signature

06-10-2018___
Date


__Rayan Black_____
Name (Printed)

**<u>Consent to Join FLSA Action</u>**

I hereby consent to join as a party plaintiff and authorize this filing of a civil action in the United States District Court against the Defendants in this lawsuit and their related entities and individuals to recover unpaid compensation, additional damages, and costs under the Fair Labor Standards Act, and be represented by the Mullen Firm PLLC and the Hansum Law Firm, PLLC (or such other persons or entities as they may designate) for purposes of bringing this action.

If this action is conditionally certified and then decertified, I authorize the above counsel to reuse this consent form to re-file my claims in a separate or related action against Defendants (or their related entities and individuals).  I further consent to join any subsequent or amended suit against the same or related Defendants for wage and hour violations.


_Marta M Tablas-Tozo_____6/18/2018        _____
Marta Tablas                                              Date